The first case on our call this Thursday morning is number 9, agenda number 128, 740, People of the State of Illinois v. Pierre Montanez. Counsel, please be seated. Good morning, your honors. May it please the court, counsel. My name is Adrienne Sloan. I'm an attorney with the Office of the State Appellate Defender, and my client is Pierre Montanez. The issue in this case is simple and straightforward. The Chicago Police Department hid a street file from Pierre Montanez, and Mr. Montanez needs a way to access that file. Thank you. That's my question. What are we doing here? Okay. You say he needs a way to get that street file. And my real big question is, is that the purpose of a PC? So I'm real confused. Can I just ask you my questions about what is in front of us? You said the issue is real simple. What's in front of us? What's in front of us is a motion for leave to file a successive PC filed in April 22, 2019. That's correct. And in that petition, Mr. Montanez states a cause, a broader claim. He says after a report of efforts to secure files, he notified the judge of his failed efforts to secure the files. The state's attorney provided him with a 2002 police report, which is Exhibit 4, which is here. This is what the state's attorney gave him. And then he says the petitioner did not have this report before trial or in his initial post-conviction. As a result, he was unaware of his claim. B, prejudice. Because petitioner's claim deals with fundamental principles of Brady, not providing this report to him was a violation in that it was favorable. The report was favorable to the petitioner. It was suppressed. And this evidence, the favorable suppressed evidence was material and that it is reasonable probability that it would have changed the result of his trial. So that's what he claimed. And it's kind of a case we see all the time. Newly discovered evidence. What is the prejudice of the fact that this was not presented earlier? And then the court has to decide whether or not this newly discovered evidence, in fact, would change the result of the case. But you're saying we shouldn't look at this case that way. That's not what this case is about. I'm almost there. You say this is a brand new claim. This is a Brady claim, you tell us. A constitutional claim that was not raised before. Now, a Brady claim is a claim that there was suppression of exculpatory material. That's how we define Brady. So, this is what we have in front of us. You would characterize it as something that it doesn't say. But let's assume you're right. That this was really all about a Brady claim. We could talk about cause. He knew about these documents in December of 2015, two and a half years before he filed this. But really what that much asks about is prejudice. That's the key. The statute says he has to show cause and prejudice on page 30 and 31 of your brief. This is how you describe what relief you are looking for. He should have leave to file so that he may be granted the simple opportunity to even make allegations of prejudice. You seem to be conceding nothing here, nothing before the trial court or this court, is an allegation of prejudice. If there's no allegation of prejudice, under the Post-Conviction Act, doesn't this have to fail by definition? What is the prejudice here? Absolutely, Your Honor. So, right now, of course, we are at the pleading stage. Mr. Monson has filed a pro se motion for leave to file an excessive petition. In his petition, our position is that he included two Brady claims. The initial Brady claim was based on the police report and also liberally construed, as we need to do at this stage. Monson, at his petition, did contain the requisite facts to make out the claim that he was prejudiced by what may have been in the remainder of the street file. So how did he, we could debate that, but how did he plead prejudice for the suppression of that evidence? So the reason that he pled prejudice is because of the character of what street files are themselves, what their purpose is, which is to conceal Brady information. It's so likely that the contents of the remainder of his file contained Brady information. So that's the standard. Maybe there's exculpatory evidence there, maybe, we don't know, right? Is that the standard that we're supposed to be using? So the first district has remanded a number of these petitions to second stage based on the fact that these litigants have well pleaded allegations of a Brady violation. I bet that's not my question. Are these well pleaded? You're saying maybe, maybe there's some exculpatory evidence, maybe? I think if you look at the history of the files themselves, it's not a maybe. Again, the very purpose of the... Because there's a sled ending beyond a maybe. Well, the problem is Mr. Montanez doesn't have the ability to obtain the rest of the file. That's exactly what's wrong here. This is exactly why we're... So then that's my next question. Where is the suppression? The Chicago Police Department? No. No. The documents have been turned over to the federal district court. The federal district court has the records and sent to him a path for him to get the records. Because he had a lawyer. The next week after he got the letter, he fired his lawyer. So I don't see where the history of the Chicago Police Department fits in here as to why he can't show presence. So first of all, it's not clear from the record that after he got the letter, he fired his lawyer. And again, he... We do know that he was in the second stage of his initial PCE when he received this information, and he had a lawyer at that time. That's correct. So the letter is dated December 3rd, 2015. The letter from Ms. Gorman alerting Mr. Montanez that she did come into contact with his street file. Mr. Montanez, the first motion that he filed to fire his attorney was December 10th, 2015. That's the date on it. As we all know about IDOC mail, it's not clear that he actually received the letter before he sent out the motion to fire his attorney. But in any case, at that time, things had broken down between him and his initial PCE attorney. And what he had done in order to attempt to obtain the street file was he did contact his trial attorney. Unfortunately, that was unsuccessful. His trial attorney was either unwilling or unable to review his street file. And from there, what he did was he reached out to the ARDC. So Mr. Montanez was really stuck by this federal court order mandating that Gorman could only share the street files with attorneys representing the street file defendants, but not with the defendants themselves. So it's the federal court order that is the problem, why he can't get these files through? The federal court order is the reason Mr. Montanez cannot receive his street file, yes. So it's not the Chicago Police Department. It's the federal court order. At this point in time, yes. It's the federal court order. So the problem with the federal court order, quite frankly, is it doesn't anticipate the realities of state court post-conviction litigation. And that is that the vast majority of initial stage post-conviction litigants, including, of course, Mr. Montanez, are not represented by counsel. So they have no way to attach the contents of their street file to this claim. So the equitable way of solving this problem, which is what the first district is doing now, is moving these litigants to the second stage. How does it fit in the PC? It seems kind of like fair. Gee, he didn't have a chance. He didn't have a lawyer. Let's give him a lawyer. My problem is, is this a post-conviction petition? Or is this some other kind of relief? Let me ask you this. You represent him now, right? That's correct. Have you made a claim? Did you file a waiver? Have I made a claim based on the street file? Have you filed a waiver with the federal court to get his files? No, I have not, Your Honor, because as an appellate attorney, I can't add to the record on appeal. So even if I were to obtain Mr. Montanez's street file, there's nothing that I could do with it at this stage. That's why he really needs PC counsel who can then look over his petition, determine if there's any Brady material in it, and file an amended petition if that's the case. And again, I'm not just – So the reason he can't get his file is because of the court order. That's correct. And you can't comply with the court order. Is that what you're saying? It's not that I can't comply with the court order. It's that I'm – as an appellate attorney, there's no way for me to use the contents of the street file. And also, if I were to get it, it wouldn't get him to second stage because he needs PC counsel to do so. I'm not a post-conviction attorney. I can't add to the record on appeal. And again, what I just really want to emphasize here is I'm not simply speculating that the street files may contain Brady material. It's well documented that the purpose of these street files themselves is to conceal Brady material. So do you need to have some type of hearing to determine is it a street file? You're using the term street file. The other side is referring to it as something different. I think really it's indisputably a street file. Ms. Gorman, the file was found in relationship to the case of Fields v. City of Chicago. This is a 2015 case where, again, Attorney Candace Gorman uncovered hundreds of these files for her client – or not only for her client, Mr. Fields, but for hundreds of other criminal defendants. Fields' file did contain exculpatory information that helped lead to his exoneration. Also, led to an award of money damages for Fields based on the fact that – Well, I'm using what was said in Fields to explain why it's more than mere speculation. It's reasonably likely to assume that the contents of these files contain Brady material. Are you asking us to change the standard, to change the requirement that in a successive petition that the petitioner has to establish cause and prejudice? Are you asking us to change that? No, absolutely not. My position is that Monsonez has alleged prejudice with his claim that the contents of his file likely contained Brady material. Likely. That's the word you just used. Likely. Likely. Yes. Does that comply with the standard? Well, it does because we're at the initial stage here. Mr. Monsonez is making a well-pleaded allegation. He's including information in his petition about the history of these files such that he is making clear that what is in his street file could change the outcome of the trial. We're at the pleading stage. Can you tell us a case that tells us that could, maybe, likely is the standard that is appropriate at the leave the file stage? Yeah. People v. Lyles, the first district case where they remanded for the exact same reason. Mr. Lyles filed a post-conviction petition that was similar to Mr. Monsonez. Was it a successive? It was, indeed. Was it a Supreme Court case? No, it's a first district case. Why don't you tell me about a Supreme Court case that's generally about PCs, about what has to be shown at the leave the file stage in terms of prejudice. I mean, the cases that I read were things like, let's see if I can find it, something about the burden on the petitioner to document, is that the word? Submit enough in a way of documentation to allow the circuit court to make the determination of prejudice. So is that enough in a way of documentation? I think Mr. Monsonez absolutely has documented that here. His petition, again, it outlines the situation that happened below. He was told he was going to get an in-camera view of this file. Now, let me ask you about this. What is that about? I'm totally confused about this discussion about the in-camera hearing. Where does that fit? He didn't plead that? That's not in the PC? That happened in the initial? I've not read yet the appeals from the initial PC. Was it raised there? What does that conversation have to do with the issues in front of this court? So it's really the background information of what happened in the circuit court leading to him receiving only the police report, and he still doesn't have the opportunity right now to view his full street file. And that's because of what happened in the circuit court. When Monsonez, again, I talked about this a little bit, but when Mr. Monsonez Did he raise any of that in his PC? No, his motion to leave, to file his successor. He did say that he was promised an in-camera review. He didn't receive the in-camera review. Instead, the state's attorney reviewed his file. He attached the federal protective order explaining that pro se litigants can't receive their files. He attached the correspondence from Ms. Gorman stating the same, and he refers to a pattern of cumulative misconduct. Where the in-camera review comes in is that after Mr. Monsonez tried repeatedly and failed to obtain his street file, he alerted the circuit court judge who was working on his initial PC, Judge Claps, and Judge Claps agreed to obtain the street file and conduct an in-camera review. Before this could happen, the case was transferred to a different judge, and the judge is who allowed the state's attorney to view his file. The reason that this is so inequitable is because right now... Excuse me. Is that the issue, what's inequitable, or prejudicial? We're looking for where is the prejudice. Can I ask a question regarding that? Why is it that there is this protective order in the first place? Why is it that no one other than who the federal district court says can access these documents? What got us to this point? The reason for the federal protective order is that the files can contain sensitive information about the complainants in these cases. What the federal court did was it told Ms. Gorman that she could obtain all the files, not just that related to Mr. Fields. How did these files wind up subject to this court order is what I'm getting. Why is it that they ever were subject to the jurisdiction of the federal court? Ms. Gorman requested to access all of the street files in order for her civil rights claim for her client, Mr. Fields, to show that CPD was engaged in a pattern and practice of unconstitutional behavior. Of course, she did show this. The Seventh Circuit has said in this case that the street files procedure was a pattern and practice by CPD involving an inherently high risk of a constitutional violation. That's the prejudice. A file exists for Mr. Montanez that is part of this pattern and practice by CPD that involves an inherently high risk that Mr. Montanez's constitutional rights were violated. All we're asking right now is that he can determine whether that was certainly the case for him, whether what's in his street file was materially exculpatory information. And that's the purpose of the PC Act is to give him a chance to investigate. It's not to give him the chance to investigate. It's because he made a well-founded allegation of a Brady material. He alleged in his petition that the police report tendered by the state was kept from him at trial and that the contents of the remainder of the file could contain Brady material. Looked at comprehensively, he's making, he's alleging enough facts to make out a Brady claim based on the unseen remainder of his file because, again, it's CPD's practice to use these files to hide Brady material. That's the point of them. And one exists in his case. The only way for him to access it is to get second stage PC counsel. It's an equitable result what happened in Lyles. Have you gone to the federal district court and made some kind of claim there? Could I have? Somebody, he's saying my files are being held by the federal district court and I'm unable to get them and I have a Brady claim, a constitutional claim, and I am asking that this, whatever, protective order be amended. Couldn't he have done that? I think what he tried to do was to comply with the federal court order by getting his criminal defense attorney, his prior criminal defense attorney, to review his file. He was unable to do that. Right now the best way for him to review his file is to get second stage PC counsel. Again, the court's, the first district's reasoning for remanding these cases is sound. Dismissing the petition at the first stage would preclude Mr. Montanez from ever discovering the contents of his hidden file, and that's unjust. Mr. Montanez needs the chance to access the file, not because he's speculating that it could contain Brady material, but because of the nature of these files, what their purpose is, what CPD's, you know, 40-year history of doing with them shows that he, exculpatory evidence was likely concealed from him at trial. If he hadn't fired his lawyer, he would have gotten these in 2014, right? Well, again, again, I don't know if I, it's not clear from the record whether he fired his lawyer before or after he received them. At some point during, you told us all the things he did to try to get these records all through the years. At some point he knew all about it, and he had fired his lawyer, and that was his problem, right? He could not get these because the court order said a lawyer or a previous lawyer had to sign it, and he couldn't get, didn't go back to his PD. Do we know if he went back to his? He didn't have a PD. He had a private trial attorney, and he did go back to his private trial attorney. The trial attorney or the PC that he fired? He didn't go back to the PC counsel that he fired because, I mean, there had been a breakdown in their relationship such that that wouldn't have been appropriate at that time. And the issue is that Mr. Montanez is in the same position as the vast majority of post-conviction litigants. The court order poses an issue in this case because it says that only attorneys can view the files, but post-conviction litigants at first stage and that leave to file stage aren't represented by counsel. So it's just no way for them to see this file unless it's a remand. That's why the First District is remanding. The state's attorney's office is actually agreeing to remand in this case now because it is reasonably likely that these files contain Brady material. It's unjust that CPD is hiding them. And this is the only— CPD is no longer hiding them. I don't know. I mean, CPD said that they were no longer hiring them after the Jones case in the 80s, and then Ms. Gorman found hundreds of different files in 2015. But he's not looking for those files in the Chicago Police Department right now. He's looking for the files that are in the federal court. Yes, he wants to access his file because it's reasonably likely that it contains Brady material. I think I'm out of time. If there are no other questions, we would just ask that this court remand for second stage proceedings, including the appointment of counsel. Thank you. Good morning, Your Honors. May it please the court, counsel, I'm Assistant Attorney General Michael Cibula on behalf of the people of the state of Illinois. Based on the questioning and some of the arguments counsel has made, I'd like to focus on two claims. The first is this idea that the circuit court judge erred by denying Petitioner's request that she review this basement file in camera. And second is the larger claim in this case that Petitioner believes he should be able to file a successive petition. In terms of this argument that the circuit court erred by denying— Is that an issue before us? Is that before us? No, it should not be, Your Honor. Where does it fit? Yeah, so just very quickly, Your Honor, the claim is clearly barred. As we all understand, that was a ruling that was made during the initial post-conviction proceedings. That order ruling was included in the notice of appeal from the initial post-conviction proceedings. So obviously that's barred. Raised to Ducata, basic rules of appellate procedure. You can't challenge it now. You also can't obviously use a successive petition to challenge rulings that were made in the initial petition, which is really what this is doing, asking for another practical review in the document, reviewing the basic file. So it's clearly barred. But I'd just like to briefly touch on the merits, because I know of that claim, because Petitioner's really tried to argue it's somehow unfair. I know that Petitioner said a lot about this claim, but I think my opponents left out some facts. And what that shows is that this file has been reviewed. An assistant state's attorney reviewed the file during the initial post-conviction proceedings and represented multiple times on the record that she compared that file to everything that had been given to the defense before trial. She found only one document that technically maybe had not been given to the defense. The reason I say technically is because as the ASA represented on the record multiple times, the substance of that document had been given to the defense before trial, word for word. The only difference was a technical formatting difference. Judge Walowski, who was the judge in the initial post-conviction proceedings, ordered the ASA to turn over that document, which she did. At that point, Petitioner asked for in-camera review for the first time. He wanted her to double-check the ASA's work. Judge Walowski obviously reasonably denied that request. She said she trusted the ASA to do that review. She had no reason to believe the ASA couldn't do a competent, accurate review, which is a reasonable decision. We've cited that in many cases in our briefs. This is what courts do. They have an ASA review the file. They don't do in-camera review automatically. So not only is that argument barred, it's already been decided, it was certainly a reasonable decision. Now, as to the main issue here is Petitioner's request that he be granted leave to file a successive post-conviction petition, the appellate court got this exactly right, and I think some of the questions alluded to this. As the appellate court pointed out, if you actually look at the petition that was filed in the circuit court, it does not contain a Brady claim based on the remainder of the basement file. As the appellate court pointed out, it contains other claims. It contains a sentencing challenge, a constitutional claim, a claim about a document called McDonald Report that was part of the basement file. But the actual claim, my opponent is raising this appeal, that there might be a Brady claim based on the remainder of the file, was not raised in the petition. And you can't raise a new claim on appeal, so it's barred. Setting that aside, Petitioner certainly can't show cause for prejudice. Again, I think it's important to kind of just quickly go through some of the procedural history because I think some things were skipped over in my opponent's argument talking about that history. Petitioner received this letter from Gorman alerting him to this basement file in 2015. This is during the initial post-conviction proceedings. He had counsel at that time. It's undisputed he had counsel at that time. In the letter, Ms. Gorman said expressly, please respond to my letter. All you have to do is tell me who your current lawyer is or who your past lawyers are. I will contact them and we'll get this file reviewed together. That's all he had to do. He could have just handed the letter to the lawyer who was representing him. Now, my opponent has said, well, it's unclear if he had fired the lawyer at the point. No, it's not.  At the time when Petitioner decided to fire his lawyer, he had the opportunity to ask for another lawyer to be appointed. So at the time that he chose to go through with firing his lawyer, he could have asked the court, look, can you appoint another attorney? I have this letter. Petitioner didn't do any of that. He sat on that letter for three years without contacting Gorman, without telling the court, without telling any lawyer. During that time, the court gave him incredible leeway to amend his petition. We cite this in our brief. He amended or supplemented his petition a number of times. At one point, he had, I believe, close to 40 different claims. He also filed pro se motions for discovery, which were granted. So this was a court that was giving him incredible leeway. This is a pro se petitioner that was certainly sophisticated enough to file things, certainly could have just simply responded to Gorman's letter and said, hey, here's my lawyers. Please contact them, or at least told the court about that. Now, this went on for three years. For all that time, all those supplements, all those new claims, nothing about this Brady claim about the basement file. In 2018, the judge, it was Judge Claps at that time, said, look, this has gone on enough. I'm dismissing your petition. Now, at that point, my opponent says for the first time in a reply brief, well, he was told to file a successive petition. But that's inconsistent with the record. Judge Claps did say, look, I'm dismissing your petition. If you come up with something later, file a successive petition. But at that point, no one had told Judge Claps or anyone about this basement file. Petitioner filed a motion to reconsider, and while it was pending, a couple months later, he finally told Judge Claps, look, I got this letter three years ago from this lawyer. Judge Claps didn't say, too bad, file a successive petition. No, Judge Claps immediately told the ASA in the courtroom, go get that file. While she was getting it, as my opponent alluded to, he was replaced by Judge Walowski. When they brought Judge Walowski up to speed on this claim and this basement file, she did not tell him to file a successive petition. Instead, as we saw in her brief, at multiple status hearings, she said, amend your petition however you want. I will consider it. And, in fact, he did amend his petition, his initial petition, to include a claim based on a McDonald report, which was that one technically different formatting document. So in terms of cause, he had every opportunity along the way throughout these initial proceedings. He was specifically invited by Gorman to contact her, by the judges to amend his petition however he wanted to do so. He didn't take advantage of that, and that's his responsibility. Now, if I could make one last point about cause, my opponent has said several times in the brief where today is, well, if you don't grant him relief, that's so unfair because what can he possibly do? Obviously, that's ignoring the many opportunities that I just mentioned, but it's also ignoring other opportunities in the future. I'm not his attorney, so I can't advise him, but file a Freedom of Information Act, file a service subpoena, contact the federal court, get the file that way. You can either do that through a lawyer or, as the protective order discusses, files can be turned over to criminal defendants. They just have to be redacted first so that you take away personal information from some of the complainants, their addresses, their social security numbers, things of that nature. That's what happened with the McDonnell report. So in terms of unfairness or cause, he had a million opportunities previously. He still has opportunities in the future, but his successive petition, at least how he has drafted it now, is not the right way to go forward. One last point quickly, if I may, in terms of prejudice. I don't think there's a lot that you need me to say on this. I think that we all know what the standard is. Speculation is not enough. Asking to go on a fishing expedition is not enough. That's exactly what this claim is. The claim really boils down to petitioners saying, well, I want somebody to double check what this ASA did, because maybe, hopefully, there's other documents. As we've pointed out, he's never identified any reason why we can't trust this ASA to do an accurate, competent review. And I think in his reply brief, he finally acknowledges that and says, well, it doesn't matter if I can't identify a reason we can't trust this ASA. But of course it matters. If there's no reason to believe that there's brainy material in there, which that's the standard he has to meet, then there's no reason to go forward with a successive petition. Counsel, I think opposing counsel is saying, well, look, we've got these other cases and they found material in those cases, so that's the basis for our, if you didn't say speculation, but I believe that there's more material there. How would you respond to that? She's saying this is a unique situation. That there were materials in other cases? That's not true. For example, the Palmer litigation is a case she cites. In different litigation, the federal courts required the police to turn over files for 300 different criminal defendants. They did not find any brainy material in any of those cases. I know my opponent mentioned, for example, Lyles. It was a successive petition that the First Circuit remanded. That's a totally different case. That was a case where the petitioner in that case, his initial proceedings ended in 2010. He didn't receive Gorman's letter until five years later. That's a cause right there for not bringing it. Unlike this case, in that case, the file had never been reviewed. Again, it's not just that petitioner is speculating about. Again, we don't agree with any case remanding at this point. The factual difference, which counsel doesn't grapple with, is that this file has been reviewed by an ASA. She has represented on the record multiple times. There is no brainy material in this. I have compared it to what was in the trial record. There's no reason at all to doubt this ASA's review. This is exactly how courts handle Brady claims. You ask the prosecutor to review the file. You don't do in-camera review. In any event, as we discussed, a claim for in-camera review is barred and meritless anyway. Unless there are any other questions, we ask this court to affirm the lower court's judgment. Thank you. Counsel, I'm very sensitive about your concerns. Please tell me why you are not speculating on what was in the Brady material. Absolutely. I think, first, Your Honor, the most important thing is what I've said above, what I said previously, which is that the nature of these files, the purpose of these files is to conceal Brady material. Other post-conviction litigants, Mr. Lyles, Mr. Fallon, Mr. Banks, are in second stage because the First District is acknowledging that these files likely contain Brady material. So every single piece of paper is Brady material, you think? No, no. The purpose of these files is to take information that could be exculpatory at trial and to hide it in a CPD basement so that the litigants don't have them at their trial. I think along with these PC litigants whose petitions are pending at the second stage, we need to look at Mr. Fields. He was exonerated based on the contents of his street file. What was in his street file was evidence that the Chicago Police Department had completely fabricated a lineup wherein it fabricated that someone had identified Fields in a lineup. The potential for prejudice in these files is extraordinary. Again, also Jones in the 80s. If we look at the Jones case, what was in his street file that led to his exoneration was evidence that the CPD had interviewed the complainants in the case, had the complainants stated that someone other than Jones perpetrated this crime. CPD put it in the street file. I'm not speculating that maybe his file for no reason at all could have contained braiding material. That's the point. That's why CPD is doing it. CPD didn't even contest in Jones that they were doing it. They said that they had stops. Contrary to this, the Fields files were all found. The Seventh Circuit has said that the use of the files, the use of the Fields files, was a pattern in practice by the Chicago Police Department that involved an inherently high risk of a constitutional violation. Counsel, what do you say to your opponent's assertion that there were multiple opportunities in the past and in the future for your client to obtain these files, but this is not the proper vehicle for that? Can you respond to that? Yes. Mr. Martinez was a pro se litigant who was extremely diligently attempting to obtain this file in order to file it. He sat on the letter for three years. He didn't sit on the letter, Your Honor. Tell me what happened in that three-year period. Yes. Actually, it's closer to two years because he got the letter at the very end of 2015. What he did when he got the letter, he states on the record multiple times, he tried to reach out to his trial attorney, which is what would have complied with the court order, his trial attorney obtaining his file. His trial attorney didn't get back to him. He actually had his family members try to reach out to his trial attorney as well. Once that was unsuccessful, what he did was he initiated ARDC proceedings against Ms. Gorman. We can debate the propriety of that, but again, he's a pro se litigant. He's doing his best. The ARDC did look into this allegation. They were looking into this allegation until April of 2018. In May of 2018 is when he brought this up to Judge Claps. At that point, Judge Claps stated that he was conducting an in-camera review. Again, an in-camera review, it doesn't necessarily comply with the court order, and that's exactly the problem here. This is a confusing situation. Mr. Montes shouldn't be faulted because he didn't know exactly what to do. It should be recognized that Mr. Montes was diligently attempting to locate this file. He didn't bring it to the court's attention. He brought it to the court's attention after the ARDC. Two years later. About two years later. He brought it to the court's attention. What about the argument here that on one hand, we have the information about all these other people and their files, and you say that's enough to show prejudice in this case. What about the fact, as counsel argues here, that what happened here was the court ordered an examination of the files by the state's attorney, which has been sanctioned certainly in other kind of Brady claim cases, and that lawyer looked through the files, and the only document was this document that he actually, it's the only document he relies on in his own PC. Yes. What about that? Yes. Initially, I would just note that the fact that the ASA looked over this at all does violate the federal court order. The federal court order mandates that attorneys for street file litigants may access the files, not attorneys arguing opposite them. So whereas these other street file litigants in the first district have moved to second stage and received the benefit of… Wait, wait, wait. You want… There's so many issues flying around here. You're saying the process violated the federal court order. If the judge had looked at it, would the judge collapse and violate the court order? Yes, probably, right? So in hammer view, while it's not the ideal option for this situation and while it's not what's happening right now in the first district, it would have been a more fair option for Mr. Montanez than Mr. Montanez's adversary reviewing the file, the same entity who's responsible for concealing the file. The state's responsible for… Okay, so let's get back to where we're supposed to be. We're talking about prejudice, okay? You agree you don't have any evidence of prejudice as to this defendant, this petitioner, Mr. Montanez. No, I have evidence of prejudice. My evidence of prejudice is that a street file does exist in Mr. Montanez's case, and what street files are for is hiding braiding material. The logical conclusion is that it's reasonably likely at this initial stage that he's pleaded the allegation or at the pleading stage that his file likely contains braiding material. Okay, and there's evidence to rebut that. The state's attorney reviewed the file. How do we balance that? So I don't think that we should take the state's attorney's review of the file at face value, especially because we don't know from the record what it was that her procedure was. We don't know where she received the street file from. We don't know where she got the trial file to compare it to. We don't know how thoroughly she went through the file. I think one thing in the state's brief that's interesting is that the state argues against in-camera review because it would be so challenging for trial judges to have to go through an entire trial record in order to determine what kind of things are braiding the case. Do we know if the ASA did that here? We have absolutely no idea. And we certainly shouldn't assume that what she did was look through the file in the same way that Montanez's own advocate would have, and the Federal Protective Order states that Montanez's own advocate should look through the file. She identified one document that was different, and the difference was minuscule. But she did find that out of all the paper, found one document, and turned that over. But we don't know if it was all of the paper. We don't know if it was all of the paper. We don't know exactly what it is that she did. And again, sometimes the appearance of impropriety is so severe, like in this case where we're handing over the documents to the people responsible for concealing them and just assuming that she's going to do as diligent a review of the file as what was contemplated by the Federal Protective Order, which is that these litigants have their own attorney's review of the file. It's just an inequitable circumstance. I think that, again, to say that this is a phishing expedition is to ignore the history of street files, to ignore the purpose of street files. Just briefly, this claim is not procedurally barred because he was told multiple times that if he wanted to add any new claims, he should file a successive post-conviction petition. He did do that. Finally, my argument doesn't depend in any way on the contention that the ASA was lying about what was in the file. I just want to really emphasize the operative issue is that Montez's adversary is the only person to this date who has ever reviewed his file. And where other litigants are now, there are agreed motions saying that the litigants' own attorneys should have the opportunity to review the file. It's unfair. To deny Mr. Montez's second-stage proceedings now just because he, unlike the other street file litigants, was given a single document from the file by the state, it's unjust. His petition claimed that it was an error for the state to go through the file. He asked repeatedly on the record for a means to review the file in its entirety, and he stated in the petition that the concealment of the file was part of a pattern of misconduct. These claims warrant second-stage proceedings. Mr. Montez deserves a chance to access his street file. Thank you. Thank you very much. This case, Agenda No. 9, No. 128, 740, people who have stated a low-life risk here, Montez, will be taken under advisement.